UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
   MARIA CAPELES MULERO,                :

                                   **Plaintiff,**  :

                                                :      1:12-cv-07348 (ALC)

         -against-                                :

                                                :      <u>**OPINION & ORDER**</u>

   CAROLYN W. COLVIN, Acting        :

   Commissioner of Social Security,      :

                                           **Defendant.**  :
------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff Maria Capeles Mulero ("Plaintiff") commenced this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Both parties have submitted motions for judgment on the pleadings. For the reasons set forth below, the Commissioner's motion (ECF No. 16) is **GRANTED**, and Plaintiff's motion (ECF No. 19) is **DENIED**.

    I.      BACKGROUND

      Plaintiff applied for Supplemental Security Income (SSI) under the Social Security Act ("Act") on September 8, 2009, (Soc. Sec. Admin. R., at 27 (cited hereinafter as "R. at __.")) based on disability caused by "nerves, bipolar [disorder], depression, herniated disc, [and] backpain." (R. at 124.) Plaintiff had been employed as an inventory clerk for five years until her place of employment went out of business on December 31, 1999. (*See* R. at 124-25.) Plaintiff's tasks included filing reports, handling paperwork and answering incoming calls and lifting heavy boxes full of books and cassettes. (*See* R. at 125.)

Plaintiff's claim was denied on December 15, 2009, and she subsequently filed a written request for a hearing on January 22, 2010. (*See* R. at 72, 76) A hearing took place on December 7, 2010 before Administrative Law Judge Kenneth G. Levin (the "ALJ" or "ALJ Levin"). (R. at 27.) Plaintiff testified through a Spanish interpreter, and testimony was also taken from medical expert and psychiatrist Dr. Joseph Vitolo and vocational expert Melissa Fass-Karlin. (R. at 39, 54, 62.)

### A. Medical Evidence

#### 1.   *Back pain*

Plaintiff's first complaint of back pain was documented on October 1, 2008 by the Doctor's Medical Group. (R. at 297.) Plaintiff was diagnosed with moderate back pain with an active lumbar strain and sprain, lumbar introverted disc without myelopathy, and sacroilitis, not elsewhere classified. (*See* R. at 297.) Plaintiff was advised to attend physical therapy which she attended the next day. (*See* R. at 298.) Plaintiff visited the Doctor's Medical Group on many occasions with generally the same complaints of back pain which medical records revealed originated when she "fell out of a hospital bed in Feb[ruary] 2005, spraining her neck and back." (R. at 298; *see also* R. at 299, 308, 314, 319, 320.) Plaintiff also sought treatment at Harlem Hospital in November 2009 for complaints of back pain, where she was prescribed Toradol and advised to follow up with her treating physician. (R. at 253-54.) Plaintiff's physical examinations were largely normal, except for an examination on August 18, 2010 following a fall that occurred three weeks prior which noted tenderness over the L4, L5 and S1 vertebrae but that her reflexes, senses, muscle tone and muscle strength remained normal. (*See* R. at 242-46, 248-49, 283-84, 308.) Plaintiff also took an MRI on August 5, 2010, which indicated Plaintiff did suffer from lower back pain with "multiple degenerated discs present." (R. at 260.)

2

### 2.   *Psychiatric Disorder*

Plaintiff first complained of bipolar disorder, anxiety and migraines to the Doctor's Medical Group on November 12, 2008, stating that the last time she saw a psychiatrist was a year prior. (*See* R. at 300.) Plaintiff was subsequently referred to a psychiatrist and prescribed alprazolam. (*See* R. at 301.) Plaintiff was observed as having a euthymic mood with appropriate perception and judgment with no delusions or hallucinations. (R. at 300.)

Plaintiff was seen by nurse practitioner Sylvia Cotto at Clay Ave Health Center for manic depression and noncompliance with her medication regimen on March 26, 2009. (R. at 197-99.) Plaintiff did not exhibit signs of psychosis or mania but Ms. Cotto did note problems with appetite and a depressed mood as Plaintiff was upset over the recent death of her 60 year-old mother. (*See* R. at 197-98.) Ms. Cotto also noted that Plaintiff was well groomed and oriented, had a cooperative attitude and logical thought processes. (*See* R. at 197.) Ms. Cotto rated Plaintiff's Global Assessment Functioning ("GAF") as 55. (*See* R. at 198.) [1]

Plaintiff continued to see Ms. Cotto for medication renewal and further examinations. (*See* R. at 195, 200, 202, 204, 207, 209-15.) Ms. Cotto noted that Plaintiff was at times noncompliant with her medication regimen. (*See, e.g.,* R. at 202.) Plaintiff reported physical abuse by her husband and that she was living in a shelter, and Ms. Cotto observed that she seemed anxious and stressed. (*See* R. at 204-08.) However, Ms. Cotto continued to observe she was well groomed and dressed appropriately, had logical thought processes, and was capable of

---

[1]   Global assessment functioning "is a scale that indicates the clinician's overall opinion of an individual's psychological, social, and occupational functioning. The GAP scale ranges from 0 to 100... [and] scores between 51–60 indicate that the individual has moderate symptoms or moderate difficulty in social, occupational, or school situations." *Petrie v. Astrue,* 412 F. App'x 401, 406 (2d Cir. 2011) (summary order) (American Psychiatric Associations, Diagnostic and Statistical Manual of Mental Disorders 376-77, at 34 (4th ed., text revision, 2000)).

3

logical reasoning and maintaining attention. (*See* R. at 210, 212.) Ms. Cotto's examinations stayed relatively constant with Plaintiff's GAF ranging in between 55 and 60, and with her never once diagnosing Plaintiff with signs of psychosis or mania. (*See* R. at 198, 210, 214-15, 221, 225.)

### B. Consultative Reports

#### 1. *Dr. Jerome Caiati*

Plaintiff was examined by Dr. Jerome Caiati, a consultative examiner, on October 16, 2009. (*See* R. at 166-69.) Dr. Caiati noted that Plaintiff was obese with a normal gait, and that she did not use an assistive device. (R. at 167.) Plaintiff was in no acute distress and did not need assistance getting on and off the exam table or rising from a chair. (R. at 167.) Further, her cervical spine had full range of motion and her upper extremities had full muscle strength with no muscle atrophy and non-sensory abnormality. (R. at 167.) Dr. Caiati observed that "from a musculoskeletal point of view, [Plaintiff's] sitting, standing, walking, reaching, pushing, pulling, and climbing was unrestricted" but that she had "minimum to mild limitation" in bending and lifting due to lower back pain. (R. at 168.) Plaintiff was diagnosed with asthma, bipolar disorder, migraines, chest pain, and nephrolithiasis. (R. at 167.)

#### 2. *Dr. Christina O'Flaherty*

Dr. Christina O'Flaherty performed a mental status evaluation of Plaintiff on October 16, 2009 and found that she "was cooperative and her overall manner of relating was adequate." (R. at 173.) Additionally, she noted that Plaintiff had a euthymic mood, her appearance was consistent with her age, she offered appropriate eye contact, and her thought processes were "coherent and goal directed with no evidence of hallucinations, delusions, or paranoia." (R. at 173.) Dr. O'Flaherty diagnosed Plaintiff with a major depressive disorder and a panic disorder

4

with mild agoraphobia. (*See* R. at 175.) However, Dr. O'Flaherty found that Plaintiff "is able to follow and understand simple directions and instructions and perform simple tasks independently." (R. at 174.) Although Dr. Flaherty noted that Plaintiff "may have difficulty maintaining, a regular schedule without support," she found that Plaintiff could relate well with others and appeared able to learn new tasks and perform complex tasks independently. (R. at 174.)

### C. Dr. Joseph Vitolo's Expert Testimony

Dr. Joseph Vitolo testified at the December 7, 2010 hearing. (R. at 54.) Prior to the hearing, Dr. Vitolo reviewed the evidence of Plaintiff's mental impairments of bipolar disorder, anxiety-related disorder and personality disorder. (*See* R. at 54.) Dr. Vitolo found these impairments caused moderate limitations in her social functioning and concentration, persistence and pace, but that they did not meet or equal the Listings for Sections 12.04 (affective disorders), 12.06 (anxiety-related disorders), or 12.08 (personality disorders) in the Federal Regulations Appendix. (*See* R. at 54-55.) Dr. Vitolo noted that two of the medications that Plaintiff was taking, Seroquel and Lamictal, caused drowsiness but that Plaintiff never indicated that she suffered from any side effects. (*See* R. at 55-56.) Additionally, Dr. Vitolo expressed concerns pertaining to an inconsistency in Ms. Cotto's report, as she found that Plaintiff was able to perform skilled or semi-skilled work, but that Plaintiff could not perform unskilled work. (*See* R. at 57-58.)

### D. ALJ Levin's Decision

On December 30, 2010, the ALJ rendered his decision denying Plaintiff's application. (R. at 34.) Specifically, ALJ Levin applied the five-step sequential analysis found in the Social Security Regulations ("Regulations") and found Plaintiff was not disabled because her

5

impairments did not meet or medically equal any of the standards set forth in the Listings and she maintained the residual functional capacity ("RFC") to perform at least light work. (*See* R. at 30-34.) The Appeals Council denied Plaintiff's request to review the ALJ's decision on August 4, 2012. (*See* R. at 1.) Plaintiff commenced this action on September 28, 2012. (Compl. ¶¶ 1-9, ECF No. 2.)

## II.   DISCUSSION

### A.   Legal Standards

The Commissioner's final decision of whether a claimant is disabled is granted deference, and this Court's review of that decision is limited to determining whether there is "substantial evidence" in the record to support it. *See* 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938)). Substantial evidence is defined by the Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which must be "more than a mere scintilla." *Richardson*, 402 U.S. at 401. The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (*citing Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)). However, a court does not defer to the Commissioner's determination if it is the product of legal error. *Douglass v. Astrue*, 496 F. App'x. 154, 156 (2d Cir. 2012) (summary order).

Disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant must have a physical or mental impairment of such a severity that they

are unable to perform any kind of "substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The Commissioner applies the five-step sequence set forth in the regulations to evaluate disability claims:

> [1] First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. [2] If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. [3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience. . . . [4] Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform h[er] past work. [5] Finally, if the claimant is unable to perform h[er] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 111 (2d Cir. 2010) (citations omitted) (quoting *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  The claimant bears the burden on the first four steps and the Commissioner has the burden of proving on the last step that the claimant has the ability to find other work in the national economy. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

In this case, the ALJ found that Plaintiff satisfied the first two steps in finding that she was not engaged in substantial gainful activity during the alleged disability period and that Plaintiff demonstrated a "'severe combination' of bipolar affective disorder, panic disorder, personality disorder (not otherwise specified), and discogenic disc disease of the back." (R. at 33.) However, the ALJ also found that Plaintiff had failed to make a satisfactory showing on steps three, four and five because her impairments were not of the severity required by the

Listings (step three), she retained the residual functional capacity to perform her prior relevant work (step four), as well as other work in the local and national economy (step five). (*See* R. at 33-34.) Consequently, only the findings of steps three, four and five are discussed herein.

### B. Analysis

#### 1. The ALJ Did Not Err in Finding That Plaintiff's Impairments Do Not Meet or Medically Equal the Listings.

The Regulations require a claimant to establish at least two of the following to establish a mental disorder is a qualifying impairment: "(1) marked restriction in his activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration." 20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.08; *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 627-628 (S.D.N.Y. 2006). In this case, the ALJ found at step three that Plaintiff's impairments of bipolar affective disorder, panic disorder, personality disorder (not otherwise specified), and discogenic disc disease of the back did not meet or medically equal any of the aforementioned requirements. (*See* R. at 33.) The Court finds this conclusion is supported by substantial evidence.

Specifically, the ALJ considered whether Plaintiff had demonstrated a "medically documented persistence, either continuous or intermittent," of "bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes." 20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.08. The ALJ found that the record was lacking of any evidence satisfying this element or any other one of the requirements of the regulations, (*see* R. 31-33), and this constitutes substantial evidence of Plaintiff's impairments not meeting the Listings. *See generally Lewis v. Comm'r, Soc. Sec. Admin.*, 95 Civ. 4478(DLC), 1997 WL 16058, at *4 (S.D.N.Y. Jan. 16, 1997) (finding that no

evidence of an impairment that met the severity of the Listings constituted substantial evidence of Plaintiff's impairments not satisfying the Listings). This Court's review of the record confirms this finding, and Plaintiff has not pointed to any material evidence overlooked by the ALJ on this issue.

Plaintiff nonetheless argues that the ALJ erred in failing to consider the combined effect of Plaintiff's physical and mental problems, but this argument is unavailing. When assessing a claimant's subjective pains 42 U.S.C. §423(d)(5)(A) provides:

> *An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability* as defined in this section; *there must be medical signs and findings*, established by medically acceptable clinical or laboratory diagnostic techniques, *which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged* and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

(emphasis added). In this case, the ALJ explicitly evaluated Plaintiff's complaints of back pain and found that, despite her complaints, Plaintiff sought very little treatment for the ailment. (R. at 30-31.) The ALJ also considered Plaintiff's visit to Harlem Hospital Center and Doctors Medical Group where she complained about back pain and both examinations revealed Plaintiff's daily activities were not limited by the reported pain. (R. at 253-255, 283.) The ALJ also noted that "when [Plaintiff] filed her application she was not receiving any treatment for her back and she has had very little such treatment between then and now." (R. at 31.) The Court therefore finds that the ALJ had an adequate basis for findings that Plaintiff was not disabled.[2]

---

[2] Relatedly, in evaluating Plaintiff's mental impairments, the ALJ did not err in according more weight to the consultative report of Dr. Viotolo than Dr. O'Flaherty. Dr. Vitolo evaluated Plaintiff's impairments using the medical records of her treating facilities on a longitudinal basis as required by the listings for mental evaluations. *See* 20 C.F.R. § 404.1527(c); (*see also* R. at 32.) As the ALJ noted, Dr. O'Flaherty, in contrast, saw the Plaintiff only one month after filing her disability claim with no records

### 2. *The ALJ Did Not Err in Finding That Plaintiff Has Residual Functional Capacity.*

The Court likewise finds the ALJ's determinations that Plaintiff retains the residual functional capacity to perform light, simple, repetitive, low stress work that do not require much social interaction is supported by substantial evidence. Residual functional capacity is defined as "'the most [a claimant] can still do despite [her] limitations' in terms of work-related physical and mental activities." *Fonseca v. Colvin*, No. 12 Civ. 5527(PAE)(JCF), 2014 WL 297488, at *10 (S.D.N.Y. Jan 28, 2014) (quoting 20 C.F.R. § 404.1545(a)(1)). In this case, the ALJ relied on the findings of consultative physician Dr. Caiati, who concluded that, although Plaintiff was obese and displayed a minimum to mild limitation when bending and lifting due to back pain, "from a musculoskeletal point of view, [her] sitting, standing, walking, reaching, pushing, pulling, and climbing [were] unrestricted." (R. at 168.) In forming his assessment, Dr. Caiati evaluated Plaintiff's full medical record, entitling his testimony to weight and constituting substantial evidence. *Cf. Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996) (vacating and remanding where expert opinion was based on incomplete medical record). The ALJ accordingly had ample basis for the conclusion that, even if he were to give [the Plaintiff] the benefit of every doubt on the issue, he could not find "that her occasional back arthralgias could reasonably be expected to restrict her below the light exertional level." (*See* R. at 31)

Plaintiff contends that the ALJ erred because he did not offer more weight to the testimony of nurse practitioner Ms. Cotto. (Pl.'s Mot. at 15.) The applicable rule, however, is that "[n]urse practitioners and physicians' assistants' [opinions] . . . *may be considered* with

---

from any treating medical facility. (*See* R. at 32.) The ALJ's reliance on Dr. Vitolo's evaluation was legitimate, then, because his review of her records offered him a more detailed and longitudinal picture of Plaintiff's impairments. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 416.927(d)(2).

10

respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight." *See Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order) (emphasis added) (citing 20 C.F.R. § 416.913(d)(1)). Thus, "while the ALJ [was] certainly free to consider [Ms. Cotto's opinion] in making his overall assessment of [Plaintiff's] impairments and residual abilities, those opinions d[id] not demand the same deference as those of a treating physician." *Id.* (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983)). Accordingly, the ALJ did not err in this case in not deferring to the testimony of Ms. Cotto, and had good cause to do so based on the noted inconsistencies in her conclusions. (*See* R. at 31-32, 37-38.)

### 3. The ALJ Did Not Err in Relying on the Vocational Expert's Finding That Plaintiff Could Perform Other Jobs In The Economy.

At step five, the ALJ determines whether there are any other jobs in the national or local economy that fit Plaintiff's limitations and skills despite her "severe" combination of impairments. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). An ALJ can make this determination by posing hypothetical questions to a vocational expert as long as there is "substantial record evidence to support the assumption[s] upon which the vocational expert base[s] his opinion," and the assumptions "accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 13 Civ. 2886, 2014 WL 3030378, at *4 (2d Cir. July 7, 2014) (citation omitted).

In this case, ALJ Levin posed a hypothetical to vocational expert Melissa Fass-Karlin about the job options for "a person of claimant's age, education and prior work experience who had [was] limited . . . to simple routine, repetitive tasks, low stress in nature involving one or two step commands and limited amount of social contact." (R. at 63; *see also* R. at 64.) Fass-Karlin listed five jobs: small products assembler, packer at the light level, machine tender, jewelry

11

assembler, and bench hand and their availability in the local and national economy. (*See* R. at 33, 63.) The Court finds the ALJ's hypothetical accurately reflects the evidence of Plaintiff's impairments in the record and that the vocational expert's testimony therefore constitutes substantial evidence in support of the ALJ's finding that Plaintiff can engage in "simple, repetitive, low-stress work involving one or two-step commands that do not require more than limited amounts of social interaction." (R. at 34.)

### 4. The ALJ Did Not Err in Discounting Plaintiff's Complaints.

Plaintiff contends that the ALJ generally erred by not accepting her subjective complaints at face value. (*See* Pl. Mot. at 16-19.) When determining credibility, an ALJ:

> [I]s required to take the claimant's reports of pain and other limitations into account, [but] he or she is not require[d] to accept the claimant's subjective complaints without question. Rather, the ALJ may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.

*Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (summary order) (citations and internal quotation marks omitted); *see also* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 416.929(b). Additionally, when ruling that a claimant is not entirely credible, an ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record." *Molina v. Colvin*, No. 13 Civ 4989 (AJP), 2014 WL 3445335, at *13 (S.D.N.Y. July 15, 2014) (citation omitted).

In this case, the ALJ noted that he "did not accept the claimant's subjective complaints at face value because of her demonstrated tendency to exaggerate." (R. at 32; *see also id.* (finding that Plaintiff "has a tendency to overstate her complaints and limitations when seeking monetary benefits" and that "[t]hat alone [was] cause for taking her complaints with a grain of salt").) In support of this, the ALJ cited, for example, the fact that Plaintiff attended the hearing with a

12

cane, although she admitted it was not prescribed, lived in a fifth floor walkup apartment, and noted in her Social Security application that she had no trouble tending to her personal needs and traveled by subway. (*See* R. at 30, 32, 41, 46, 52, 133-36, 138.) These findings constitute ample evidence in support of the ALJ's determination to discount Plaintiff's testimony.

### III. CONCLUSION

For the reasons set forth above, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is **GRANTED** and Plaintiff's Cross-Motion (ECF No. 19) is **DENIED**. The Clerk of Court is respectfully directed to enter a judgment for the Commissioner and to close this case.

**SO ORDERED.**

Dated: August 18, 2014
      New York, New York

                                        ANDREW L. CARTER, JR.
                                        United States District Judge